JUDGE FAILLA

20 CV 00209

FREEBORN & PETERS LLP
Marc B. Zimmerman
mzimmerman@freeborn.com
Kathryn T. Lundy
klundy@freeborn.com
230 Park Avenue, Suite 630
New York, NY 10169
(212) 218-8760
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
SFM REALTY CORP.,                              :
                                               :
                      Plaintiff,               :   Case No.:
         v.                                    :
                                               :   **COMPLAINT**
PATRICIA M. LEMANSKI,                          :
                                               :
                      Defendant.               :
------------------------------------------------------------ x

Plaintiff SFM Realty Corp. ("SFM" or the "Company"), by and through its attorneys, Freeborn & Peters LLP, as and for its Complaint, alleges as follows:

## NATURE OF THE CASE

1. This action is brought to remedy the unlawful conduct of Defendant Patricia M. Lemanski ("Defendant") for her unauthorized misappropriation and retention of SFM's confidential, proprietary and trade secret information and breach of her contractual and common law obligations. Throughout the course of her employment, Defendant misappropriated countless files, agreements and other trade secret and confidential information of SFM. Now that Defendant's misconduct has been discovered by SFM (although the full extent of her wrongdoing, or that of others, remains unknown), SFM seeks to hold Defendant accountable,

stopping her from further exploiting SFM's confidential information and putting an immediate halt to the substantial and irreparable harm and damages Defendant has caused and continues to cause SFM as a result of her unlawful activities.

## THE PARTIES

2. SFM was and is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 261 Madison Avenue, New York, New York 10016.

3. Its operations are international and it is engaged in interstate commerce.

4. Upon information and belief, Defendant resides in New Jersey and conducts business in the State and County of New York.

## JURISDICTION AND VENUE

5. This Court has exclusive subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 in that this case arises under 28 U.S.C. § 1831, *et seq.* The Court has supplemental jurisdiction over SFM's remaining claims under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because she conducts business in New York and has committed acts of trade secret misappropriation and other torts in the State of New York and in this district.

7. Venue is properly laid in this district pursuant to 28 U.S.C.A. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein occurred within the Southern District of New York.

## GENERAL ALLEGATIONS

8. SFM is part of The Sapir Organization, a multidisciplinary real estate investor, operator and developer whose portfolio spans multiple property classes, including commercial, residential and hospitality assets such as the NoMo SoHo Hotel, development properties in Miami and office buildings in Manhattan. Included within The Sapir Organization is Sapir Corp., Ltd., which is publicly traded on the Tel Aviv Stock Exchange.

9. Defendant is employed by SFM as an assistant and paralegal and is responsible for, among other things, supporting real estate transactions and closings for the Sapir Organization. Defendant has been employed by SFM in this role since her hire on September 7, 2011.

10. SFM has recently discovered that Defendant has misappropriated, converted and/or stolen SFM's proprietary information, specifically, including documents and electronic data, the vast majority of which contain confidential and trade secret material.

11. In addition, much of this information constitutes "inside information" under Israeli securities laws.

12. Defendant has been systemically, and without authorization, sending SFM's confidential trade secret information beyond the SFM firewall to Defendant's personal e-mail account (tri714@gmail.com).

13. Such misappropriated information included documents containing SFM's key business contact information, operating agreements, leases, vendor agreements (including fees and scope of services), technical data, methods and procedures of business operations and financial data (including loan agreements), all of which would cause irreparable harm to SFM

and its business interests if divulged to a competitor or used in connection with activities competitive to SFM's business.

14. SFM has made copies of the e-mails and attachments it has identified to date containing SFM's information misappropriated by Defendant and sent by Defendant from a SFM e-mail account to Defendant's personal e-mail account.

15. The timing of Defendant's actions demonstrate they were deliberate and intended to misappropriate SFM's information.

16. For example, on January 3, 2020 at 11:27 a.m., Defendant sent an e-mail and attachment to her personal e-mail account containing confidential and sensitive loan modification documents.

17. Later that same day, at 12:58 p.m., Defendant again sent an e-mail and attachment to her personal e-mail account containing these confidential and sensitive loan modification documents.

18. These attachments had recently been finally executed and Defendant had no part in their drafting; there is no possible legitimate reason Defendant could have to forward these documents to her personal email account.

19. The fact that Defendant did so twice in the same day further confirms that the acts were intentional and that she wanted to ensure receipt by her personal account.

20. SFM's preliminary searches have revealed that over the course of the past year, Defendant has e-mailed large volumes of confidential, inside, and trade secret information to her personal email account.

21. For instance, on Friday, August 23, 2019, Defendant misappropriated and e-mailed to her personal e-mail account a zip file containing a comprehensive set of all service contracts, leases and other agreements relating to the operations of one of the organization's hospitality assets, a luxury hotel, which she requested and obtained from the operator without the authorization of SFM management.

22. These unauthorized e-mails containing SFM business information were sent to Defendant's personal e-mail account with no legitimate SFM business reason.

23. Defendant had little or no professional involvement with any of SFM's documents contained in the unauthorized e-mails Defendant sent to her personal e-mail account.

24. Defendant also sent, without authorization, other e-mails to her personal e-mail containing SFM's confidential and trade secret information with respect to transactions that had already closed and with respect to which Defendant had little or no current professional involvement.

25. In connection with SFM's business, it is critical to maintain the confidentiality of proprietary and trade secret information concerning, inter alia, the operations of The Sapir Organization's hotel and luxury condominium properties, the business and economic terms of its leases with tenants at its office and retail properties, the business relationships it maintains, the vendors it uses and the terms of those agreements, the scope of services provided and the technology maintained at its properties, the financial terms of its credit facilities and loan documents, the financial and other terms of its agreements with joint venture and other partners, and its intentions as to acquisitions, dispositions and financings of its assets.

26. Unauthorized disclosure of such information to a third party would provide critical information to competitive entities that could be used to "roadmap" a competitor in connection with operations, development, acquisitions and business plans, fuel insider trading, and duplicate operational, service and development techniques that The Sapir Organization has spent years, and even decades, establishing.

27. Defendant misappropriated and e-mailed to her personal e-mail account such confidential and trade secret information, including documents such as loan agreements, operating agreements, lease agreements, summary notes of business transactions and vendor agreements, including fees and detailed scope of services, and notes on negotiations with joint venture partners and tenants.

28. Access to and knowledge of such SFM information misappropriated by Defendant, both individually and collectively, would permit competitive entities to compete unfairly with SFM based upon such access to and knowledge of SFM's non-public business relationship and information concerning its methods and procedures of operation and financial details.

29. For example, on Thursday, June 13, 2019, Defendant misappropriated and e-mailed to her personal e-mail account SFM documents containing a lease summary of all the financial and other material terms of a large tenant at a Sapir Organization office building.

30. On Wednesday, July 31, 2019, Defendant misappropriated and e-mailed to her personal e-mail account SFM documents containing a lease summary of all the financial and other material terms of another large tenant at a Sapir Organization office building.

31. On Thursday, August 1, 2019, Defendant misappropriated and e-mailed to her personal e-mail account several SFM documents consisting of the complete lease with exhibits, all amendments, the lease guarantee and rent, completion and commencement date notice sent by the landlord (*i.e.*, a Sapir Organization company) with respect to another large tenant at the same office building.

32. The information contained in such documents includes highly confidential trade secret information because it could be used by a competitor to lure such tenants away from the Sapir Organization's buildings or undercut deals with potential future tenants, give potential future tenants an unfair edge on negotiations, and provide competitors with inside information as to how the buildings are managed and how expenses are recouped, as well as the cost and scope of landlord improvements to the space, landlord's financial allowances to tenants for buildouts, and similar items that could be used to allow competitors to match or undercut terms or duplicate SFM's proprietary formulas for in-house development, construction and management.

33. SFM goes to great lengths to protect and secure its proprietary, confidential trade secret information from unauthorized disclosure.

34. SFM's computer network and email files are all password protected. Defendant had 24 hour a day, 7 day a week access to her SFM emails from her cell phone, other mobile device in her possession and control, her desktop and her SFM issued laptop computer (which, upon information and belief, Defendant kept at her residence), including backup access from a web-based platform in case of server issues.

35. There is/was no reason for Defendant to send SFM's materials to her own personal e-mail except for purposes of misappropriating such information and to convert them for her own

use or purposes, or for those of a third party.

36. In addition to securing SFM's documents and information with password protection, SFM's employees, including Defendant, are required to read, acknowledge and adhere to the following click through acknowledgment each time they seek to gain access to SFM's computer system:



37. In addition to these frequent (if not daily) reminders of SFM's requirement that Defendant maintain and secure its confidential and trade secret information, the SFM's Employee Handbook, which Defendant received at or around the commencement of her employment (and periodically thereafter), also expressly states the necessity of protecting and safeguarding SFM's confidential and trade secret information.

38. Defendant, as part of her duties, worked extensively on updates to the Employee

Handbook over the past several years.

39. Defendant was aware of the provisions of SFM's Employee Handbook including, without limitation, its protections of SFM's confidential, proprietary trade secret information.

40. As an additional safeguard to SFM's confidential information and trade secrets, Defendant entered into a Confidentiality and Work-For-Hire Agreement with SFM dated March 22, 2016.

41. Section 1(a) of the Confidentiality and Work-For-Hire Agreement with SFM dated March 22, 2016 contains a comprehensive confidentiality provision, as follows:

> **1. Confidential Information**
>
> **(a) Company Information**  I agree that I have had access to the Confidential Information, as defined herein, of the Employer, the Sapir Organization, ASRR LLC, SFM Realty Corp., and any entity owned or controlled (whether directly or indirectly) by members of the Sapir family (including, without limitation, Rotem Rosen), and each of their respective subsidiaries or affiliates (collectively the "**Company**").  That said Confidential Information is valuable to the Company, and that the unauthorized release of that information would cause serious damage to the Company.  I therefore agree to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Company, any Confidential Information of the Company.  I understand that "**Confidential Information**" means any of the Company's proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers, markets, software, developments, inventions, processes, formulas, technology, engineering, marketing, finances, business plans, Work Product (as defined below) or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation, whether on, before or after the date hereof.  In the event that I am required by law to disclose any Confidential Information, I will give the Company prompt advance written notice thereof and will provide the Company with reasonable assistance in obtaining an order to protect the Confidential Information from public disclosure.

42. Additionally, Defendant entered into a separate Confidentiality Agreement with SFM in or about March 2018 (the "Confidentiality Agreement"), which superseded the initial March 22, 2016 confidentiality agreement.

43. Section 2 of the Confidentiality Agreement defines "Confidentiality" as follows:

> **2. Confidential Information.** The Employee acknowledges that in the course of his employment at Employer, Employer has disclosed, and will continue to disclose, to the Employee and the Employee has received access to, obtained, developed and created, and will continue to receive access to, obtain, develop and create, information relating to the Companies and AS, and their respective affiliates, and each of their respective businesses and properties, which -may include, without limitation, past, present and future investments (existing and potential), financial data and statements, methods and procedures of operation, business plans and ventures (existing and potential), strategies, completed and potential transactions, communications, internal documents and memoranda, e-mails, plans and specifications, drawings, marketing materials, the work product of the Companies' consultants, and other business information, all whether in oral, visual, written, electronic or other tangible or intangible form which is not publically known or available (collectively referred to as the "Confidential Information"). The Employee acknowledges that the Confidential Information and the Companies' and AS' ability to reserve the Confidential Information for the exclusive knowledge and use of the Companies and AS is of great competitive importance and commercial value to the Companies and AS, and that improper use or disclosure of the Confidential Information by the Employee to RR or any other Person will cause irreparable harm to the Companies and AS, for which remedies at law will not be adequate and may also cause AS to incur financial costs and loss of business advantage. For the purposes of this Agreement, subject to the terms hereof, Confidential Information shall also include the existence of this Agreement, the terms hereof or that Confidential Information has been made available pursuant to this Agreement. Confidential Information does not include information or material that: (i) has become part of the public domain through no act or omission on the part of the Employee or the Employee's Representatives (as defined below) in violation of this Agreement; (ii) is approved for release by AS in writing; (iii) with respect to disclosure to RR, was disclosed to RR prior to the Closing Date through the ordinary course of business in connection with RR's position as an officer, director, manager or other similar role for any of the Companies (provided that Confidential Information shall include any new, updated or

related information or material related to such information or material that was updated subsequent to the disclosure to RR in accordance with this subsection (iii)); or (iv) subject to the terms of this Agreement, is required to be disclosed by law or other legal process.

44. Section 3 of the Confidentiality Agreement expressly prohibits Defendant's disclosure of confidential information.

45. Specifically, Section 3 of the Confidentiality Agreement provides:

> 3. Confidentiality and Non-Disclosure. The Employee agrees (a) to keep the Confidential Information confidential, and shall not directly or indirectly divulge, make known, publish, or distribute by any means, or any manner whatsoever, either individually, or on behalf of any other Person (as defined below), whether formal or informal, any such Confidential Information to RR or any other Person, (b) that neither the Employee nor any of his professional advisors (including attorneys and technical consultants, but specifically excluding RR (whether individually or as a current or former officer, director, manager or any other capacity of a company (including any of the Companies)), collectively, "Employee's Representatives") shall use or appropriate the Confidential Information for its/their own, or any other Person's commercial use or benefit except in connection with the Employee's obligations in respect of the Employee's employment with the Companies and as otherwise permitted or required under this Agreement, and (c) that the Confidential Information shall not be used by the Employee or any of Employee's Representatives for any purpose other than in connection with the Employee's obligations in respect of the Employee's employment with the Companies, unless otherwise specifically agreed to in writing by AS. The Employee may disclose the Confidential Information on a strictly "need to know" basis to Employee's Representatives involved in connection with the Employee's obligations solely in respect of the Employee's employment with the Companies. The Employee shall inform each of Employee's Representatives to which the Confidential Information is disclosed of the confidential nature of the Confidential Information and shall cause such Employee's Representatives to comply with this Agreement as if they were parties to it and the Employee hereby expressly agrees to be responsible for any breach of this Agreement by any of Employee's Representatives. Except as otherwise specifically provided in Section 3 or 5 hereof, the Employee and Employee's Representatives shall not make any of the Confidential Information available to, nor disclose any of the contents thereof, to RR or to any other Person unless AS has consented in writing to the use of or furnishing of the particular portion of the

11

>Confidential Information (and only that portion) or the disclosing of the contents thereof to RR or such other Person. The term "Person" as used in this Agreement shall be broadly interpreted to include, without limitation, any firm, partnership, joint venture, association, group, corporation, partnership, other entity or individual.

46. The Confidentiality Agreement also contains an acknowledgement by Defendant that her breach of the Confidentiality Agreement would cause SFM irreparable harm and that the company would be entitled to injunctive relief restraining such disclosure or distribution, in the nature of the relief sought herein.

47. Defendant's transmission of SFM's confidential information violated the frequent (if not daily) reminders of SFM's protection of its confidential and trade secret information in addition to SFM's policy and the Confidentiality Agreement and constituted an egregious breach of trust, contract and law.

48. SFM reasonably fears that Defendant's knowing, intentional and unauthorized misappropriation of its confidential and trade secret information has caused, or will cause, SFM irreparable harm.

49. Defendant's actions at the expense of SFM were/are for her own personal benefit, or for the benefit of a third-party competitor.

## FIRST CAUSE OF ACTION
### Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.)

50. SFM repeats and realleges the allegations set forth in paragraph 1 through 49 as if fully set forth herein.

51. The improper acts described above consisting of misappropriation of the confidential information by improper means comprises a violation of the Economic Espionage Act, 18 U.S.C.A. §§ 1832(a), 1839(3) *et seq.*, as amended by the Defend Trade Secrets Act of

2016 ("DTSA").

52. SFM's propriety, confidential information and trade secrets described herein comprises "trade secrets" within the DTSA.

53. SFM's propriety, confidential information and trade secrets comprise a formula, pattern, business data compilation, program, device, method, designs, technique, invention, plan, procedure and process.

54. SFM's propriety, confidential information and trade secrets are related to and intended for use in interstate commerce.

55. SFM derives independent economic value from its propriety, confidential information and trade secrets because it is not generally known to, and is not readily ascertainable through proper means by other persons who may be able to obtain economic value from its disclosure or use.

56. An award of money damages will not be sufficient to make SFM whole. The loss of its intellectual property and confidential information may damage SFM revenues and loss of standing in the industry.

57. The secrecy of SFM's propriety, confidential information and trade secrets is maintained by SFM by limiting access to such information and materials only to persons with a need-to-know and it is password protected.

58. Defendant agreed in writing and covenanted to maintain the confidentiality of its propriety, confidential information and trade secrets; not to disclose such information and material without written consent; remove it from the Company's premises (its server) not to

otherwise use such information and material; and to promptly upon SFM's request return or destroy all copies of the Confidential Information.

59. Despite her written agreement, Defendant misappropriated the Confidential Information by misappropriating, converting or otherwise without authorization copying, duplicating, downloading, replicating such information and material.

60. Given the nature of the information wrongfully taken, it is reasonable to suspect that it will be used by Defendant or some other third-party to unfairly compete with SFM.

61. Upon information and belief, Defendant's misappropriation and disclosure of SFM's propriety, confidential information and trade secrets was for improper personal gain.

62. Defendant's misappropriation of SFM's propriety, confidential information and trade secrets was done through improper means including, but not limited to, the outright misappropriation of such information and material by sending it to her private e-mail account and other yet to be determined methods; the breach of her express written duties to maintain the secrecy of and limit the disclosure of SFM's propriety, confidential information and trade secrets; obtaining such information and materials through electronic espionage; and accessing and possibly disseminating the such information and material without authorization and exceeding the scope of her authorization to transmit such information and materials outside the firewall for her personal gain.

63. As a direct and proximate result of these wrongful actions, SFM has sustained economic injury for which it is entitled to monetary compensation.

64. SFM is also entitled to the return of all property and information wrongfully

converted, including but not limited to its propriety, confidential information and trade secrets, as well as an injunction to prevent further unlawful dissemination of SFM's propriety, confidential information and trade secrets.

65. As a result of the foregoing, SFM stands to sustain significant injury for which it is entitled to monetary compensation in an amount to be determined at trial; the return of all property wrongfully converted, including but not limited to SFM's propriety, confidential information and trade secrets; and an injunction to prevent further unlawful dissemination of such information and materials.

## SECOND CAUSE OF ACTION
### Breach of Contract

66. SFM repeats and realleges the allegations set forth in paragraph 1 through 65 as if fully set forth herein.

67. Defendant entered into the Confidentiality Agreement in or about March 2018.

68. SFM satisfied its contractual obligations under the Confidentiality Agreement.

69. Defendant breached the Confidentiality Agreement by, among other things, misappropriating SFM's trade secrets, confidential and proprietary information in express violation of the confidentiality provision contained in the Confidentiality Agreement.

70. The Confidentiality Agreement expressly states that the company's propriety, confidential information and trade secrets is "of great competitive importance and commercial value to [SFM]…."

71. Moreover, in the Confidentiality Agreement, Defendant expressly acknowledge that "improper use or disclosure of the Confidential Information by the Employee…will cause

irreparable harm to [SFM]...."

72. SFM has been damaged as a result of Defendant's breach of the Confidentiality Agreement.

73. Defendant's breach of contract was intentional, knowing, willful, malicious, fraudulent and oppressive. SFM is therefore entitled to injunctive relief an award of exemplary damages and reasonable attorneys' fees in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Breach of Duty of Loyalty

74. SFM repeats and realleges the allegations set forth in paragraph 1 through 73 as if fully set forth herein.

75. Defendant owed a duty of loyalty as an employee of SFM.

76. Pursuant to her Confidentiality Agreement, and as a matter of common law, Defendant was obligated to protect SFM's proprietary, confidential information and trade secrets.

77. Defendant breached that duty by acting to advance her own personal interest at the expense of SFM's interests.

78. Specifically, Defendant intentionally and knowingly misappropriated SFM's proprietary and confidential information for her own personal gain in an effort to undermine SFM's business opportunities and operations.

79. The foregoing breach by Defendant has harmed SFM.

80. As a result of the foregoing, Defendant is liable for damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Common Law Misappropriation of Trade Secrets

81. SFM repeats and realleges the allegations set forth in paragraph 1 through 80 as if fully set forth herein.

82. The rights and interests of SFM in its confidential information, described above, constitute trade secrets as defined by the common law of the State of New York.

83. SFM owns all of the rights, title and interest in and to the trade secrets that Defendant has misappropriated.

84. Because of SFM's reliance on the confidentiality provision in its Confidentiality Agreement with Defendant, SFM provided Defendant with access to and knowledge of SFM's trade secrets.

85. Such trade secrets were and are primary assets of SFM and have actual and potential independent economic value for SFM.

86. SFM has carefully guarded its trade secret information and has taken reasonable steps to maintain its secrecy and protection.

87. Defendant had knowledge that SFM regarded its proprietary, confidential information as trade secrets and of her legal obligation and duty, by virtue of the Confidentiality Agreement and her duty of loyalty, to preserve the confidentiality of SFM's trade secrets.

88. Notwithstanding the foregoing, Defendant knowingly, willfully and maliciously violated the Confidentiality Agreement and her duty of loyalty and breached SFM's confidences by misappropriating SFM's trade secrets for her personal gain.

89. As a direct and proximate result of Defendant's conduct, SFM stands to suffer the

disruption of its business relationships, injury to its reputation, misappropriation of its trade secrets and devaluation of its trade secrets and business.

90. Defendant's misappropriation of SFM's trade secrets has caused and will continue to cause SFM substantial injury, including, but not limited to actual damages, harm to its reputation, and the diminution in value of its trade secrets and business.

91. Defendant's misappropriation of SFM's trade secrets was intentional, knowing, willful, malicious, fraudulent and oppressive. SFM is therefore entitled to an award of exemplary damages and reasonable attorneys' fees.

92. As a result of the foregoing, SFM has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial; the return of all property wrongfully converted, including but not limited to the SFM's propriety, confidential information and trade secrets; and an injunction to prevent further unlawful dissemination of such information and materials.

## JURY DEMAND

SFM hereby requests a trial by jury on all issues so triable by right.

**WHEREFORE,** SFM respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

(i) Awarding damages as described in each of the above claims, in favor of SFM and against Defendant in amounts to be determined at trial;

(ii) Granting a temporary restraining order and preliminary and permanent injunction against Defendant, enjoining her from violating her legal and contractual duties to SFM from

accessing, using or disclosing SFM's proprietary and confidential information and trade secrets;

    (iii)    Awarding punitive damages in favor of SFM and against Defendant in an amount to be determined at trial;

    (iv)    Attorneys' fees and costs; and

    (v)    Such other and further relief this Court deems just and proper.

Dated: New York, New York
       January 9, 2020

FREEBORN & PETERS LLP

By: _____
Marc B. Zimmerman
Kathryn T. Lundy
230 Park Avenue, Suite 630
New York, New York 10169
(212) 218-8760
*Attorneys for Plaintiff*